**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID RAMSEY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RENEWABLE ENERGY GROUP, INC., RANDOLPH L. HOWARD, CYNTHIA J. WARNER, CHAD STONE, and TODD ROBINSON,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff David Ramsey ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Renewable Energy Group, Inc. ("Renewable Energy" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Renewable Energy; and (c) review of other publicly available information concerning Renewable Energy.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Renewable Energy securities between May 3, 2018 and February 25, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Renewable Energy provides clean, low carbon transportation fuels. It is North America's largest producer of advanced biofuels.

3.      The biodiesel tax credit ("BTC") is a federal biodiesel mixture excise tax credit whereby the first person to blend pure biomass-based diesel with petroleum-based diesel fuel receives a $1.00-per-gallon refundable tax credit. It is an incentive shared across the advanced biofuel production and distribution chain through routine, daily trading and negotiation. The BTC was first implemented on January 1, 2005, but has been allowed to lapse and then been reinstated, sometimes retrospectively. In February 2018, the BTC was retroactively reinstated for 2017, but was not reinstated for 2018. In December 2019, the BTC was retroactively reinstated for 2018 and 2019 and made effective from January 2020 through December 2022.

4.      On February 25, 2021, after the market closed, Renewable Energy issued a press release announcing its fourth quarter and full year 2020 financial results. Therein, the Company revealed that it would restate "$38.2 million in cumulative revenue from January 2018 through September 30, 2020" because Renewable Energy was not the "proper claimant for certain BTC payments on biodiesel it sold between January 1, 2017 and September 30, 2020." Renewable Energy further stated that it had reached an agreement with the Internal Revenue Service "on a $40.5 million assessment, excluding interest" to correct these claims.

5.      On this news, the Company's share price fell $8.17, or 9.5%, over two consecutive trading sessions to close at $77.77 per share on February 26, 2021, on unusually heavy trading volume.

6.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that due to failures in the diesel additive system, petroleum diesel was not periodically added to certain loads by the Company and was instead added by the Company's customers; (2) that, as a result, Renewable Energy was not the proper claimant for certain BTC payments on biodiesel it sold between January 1, 2017 and September 30, 2020; (3) that, as a result, Renewable Energy's revenue and net income were overstated for certain periods; (4) that there was a material weakness in the Company's internal control over financial reporting related to the purchase and use of the petroleum diesel gallons when blending with biodiesel; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

12.     Plaintiff David Ramsey, as set forth in the accompanying certification, incorporated by reference herein, purchased Renewable Energy securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Renewable Energy is incorporated under the laws of Delaware with its principal executive offices located in Ames, Iowa. Renewable Energy's common stock trades on the NASDAQ exchange under the symbol "REGI."

14.     Defendant Randolph L. Howard ("Howard") was the Company's Chief Executive Officer ("CEO") from July 2017 to January 14, 2019.

15.     Defendant Cynthia J. Warner ("Warner") has been the Company's CEO since January 14, 2019.

16.     Defendant Chad Stone ("Stone") was the Company's Chief Financial Officer ("CFO") from August 2009 to December 3, 2020.

17.     Defendant Todd Robinson ("Robinson") has served as the Company's interim CFO since December 3, 2020.

18.     Defendants Howard, Warner, Stone, and Robinson (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Renewable Energy provides clean, low carbon transportation fuels. It is North America's largest producer of advanced biofuels.

20.     The biodiesel tax credit ("BTC") is a federal biodiesel mixture excise tax credit whereby the first person to blend pure biomass-based diesel with petroleum-based diesel fuel receives a $1.00-per-gallon refundable tax credit. It is an incentive shared across the advanced biofuel production and distribution chain through routine, daily trading and negotiation. The BTC was first implemented on January 1, 2005, but has been allowed to lapse and then been reinstated, sometimes retrospectively. In February 2018, the BTC was retroactively reinstated for 2017, but was not reinstated for 2018. In December 2019, the BTC was retroactively reinstated for 2018 and 2019 and made effective from January 2020 through December 2022.

### Materially False and Misleading
### Statements Issued During the Class Period

21.     The Class Period begins on May 3, 2018. On that day, Renewable Energy announced its first quarter 2018 financial results in a press release that stated, in relevant part:

- Revenues of $689.3 million, inclusive of the BTC, up 65% y/y

- 135 million gallons sold, up 11% y/y

- 106 million gallons produced, up 10% y/y

- Net income of $209.2 million or $5.30 per share, inclusive of the BTC, up from net loss of $15.9 million y/y, or $(0.41) per share

- Adjusted net income of $4.7 million or $0.12 per share, up from an Adjusted net loss of $13.6 million, excluding the BTC for 2017, y/y, or $(0.35) per share

- Adjusted EBITDA of $17.5 million, up from $0.6 million y/y excluding the BTC for 2017

22.     On May 5, 2018, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2018, affirming the previously reported financial results. Regarding the BTC, it stated: "It is uncertain whether the BTC will be reinstated and if reinstated, whether it would be reinstated retroactively or on the same terms. The lapsing or modification of the BTC would adversely affect our financial results." Renewable Energy also stated that its "disclosure controls and procedures were effective as of March 31, 2018" and that its "internal control over financial reporting was effective as of March 31, 2018."

23.     On August 6, 2018, Renewable Energy announced its second quarter 2018 financial results in a press release that stated:

- Net income of $33.0 million or $0.78 per diluted share, up from net loss of $34.8 million, or $0.90 per diluted share y/y

- Adjusted net income of $23.5 million or $0.56 per share, up from $4.5 million, or $0.12 per share excluding allocation of the 2017 BTC y/y

- Adjusted EBITDA of $42.3 million, up from $19.7 million y/y, excluding allocation of the 2017 BTC

- Revenues of $580.2 million, up 8% y/y

- 172 million gallons sold, up 7% y/y

- 124 million gallons produced, up 6% y/y

24.     On August 7, 2018, the Company filed its quarterly report on Form 10-Q for the period ended June 30, 2018, affirming the previously reported financial results. Regarding the BTC, it stated: "It is uncertain whether the BTC will be reinstated and if reinstated, whether it would be reinstated retroactively or on the same terms. The lapsing or modification of the BTC would adversely affect our financial results." Renewable Energy further stated that its "disclosure controls and procedures were effective as of June 30, 2018" and that its "internal control over financial reporting was effective as of June 30, 2018."

6

25.    On November 6, 2018, Renewable Energy announced its third quarter 2018 financial results in a press release that stated, in relevant part:

- Net income of $24.3 million or $0.53 per diluted share, up from net loss of $11.4 million, or $0.29 per diluted share y/y

- Adjusted net income of $19.8 million or $0.43 per share, up from Adjusted net loss of $15.1 million, or $0.39 per diluted share excluding allocation of the federal Biodiesel Mixture Excise Tax Credit ("BTC") for 2017 y/y

- Adjusted EBITDA of $34.6 million, up from negative $1.5 million y/y, excluding allocation of the 2017 BTC

- Revenues of $597.8 million, down 5% y/y

- 179 million gallons sold, up 18% y/y

- 139 million gallons produced, up 16% y/y

26.    On November 7, 2018, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2018, affirming the previously reported financial results. Regarding the BTC, it stated: "It is uncertain whether the BTC will be reinstated for 2018 and beyond and if reinstated, whether it would be reinstated retroactively or on the same terms. The modification or failure to reinstate the BTC could have a material adverse effect on our financial results." It also stated that Renewable Energy's "disclosure controls and procedures were effective as of September 30, 2018" and that its "internal control over financial reporting was effective as of September 30, 2018."

27.    On March 5, 2019, Renewable Energy announced its fourth quarter and full year 2018 financial results in a press release that stated, in relevant part:

**Fourth Quarter 2018 Highlights:**

- Net income from continuing operations of $30.4 million, or $0.66 per diluted share, compared to a net loss from continuing operations of $13.9 million, or $0.36 per diluted share y/y

- Net loss from discontinued operations of $12.2 million, or $0.33 per diluted share, compared to net loss from discontinued operations of $3.1 million, or $0.08 per diluted share y/y

- Adjusted EBITDA of $44.5 million, up from $6.5 million y/y, excluding allocation of the 2017 Biodiesel Mixture Excise Tax Credit (BTC)

- Revenues of $519.8 million

- 163.2 million gallons of fuel sold

**Full Year 2018 Highlights:**

- Net income from continuing operations of $295.8 million, or $6.78 per diluted share, compared to a net loss from continuing operations of $66.3 million, or $1.71 per diluted share y/y

- Net loss from discontinued operations of $11.3 million, or $0.30 per diluted share, compared to net loss from discontinued operations of $12.8 million, or $0.33 per diluted share y/y

- Adjusted EBITDA of $138.9 million, up from $25.3 million y/y, excluding allocation of the 2017 BTC

- Revenues of $2.4 billion

- 649.2 million gallons of fuel sold

28.     On March 7, 2019, the Company filed its annual report on Form 10-K for the period ended December 31, 2018 (the "2018 10-K"), affirming the previously reported financial results. Regarding the BTC, the report stated, in relevant part:

It is uncertain whether the BTC will be reinstated for 2018 or later years and if reinstated, whether it will be reinstated retroactively or on the same terms. The modification or failure to reinstate the BTC would have a material adverse effect on our financial results. As of December 31, 2018, we estimate that if the BTC is reinstated on the same terms as in 2017, our Adjusted EBITDA for business conducted in the year ended December 31, 2018 would increase by approximately $237 million.

29.     The 2018 10-K also stated that Renewable Energy's "disclosure controls and procedures are effective as of December 31, 2018" and that its "internal control over financial reporting was effective as of December 31, 2018."

8

30.     On May 2, 2019, Renewable Energy announced its first quarter 2019 financial results in a press release that stated, in relevant part:

- 162 million gallons sold

- 117 million gallons produced

- Revenues of $478.2 million

- Net loss from continuing operations of $41.4 million, or $1.11 per diluted share

- Net loss from discontinued operations of $2.0 million, or $0.05 per diluted share

- Adjusted EBITDA of negative $27.4 million, excluding the potential benefit of a retroactive reinstatement of the federal Biodiesel Mixture Excise Tax Credit (BTC)

31.     On May 3, 2019, Renewable Energy filed its quarterly report on Form 10-Q for the period ended March 31, 2019 (the "1Q19 10-Q"), affirming the previously reported financial results. Regarding the BTC, the report stated, in relevant part:

> It is uncertain whether the BTC will be reinstated for 2018 or later years and if reinstated, whether it would be reinstated retroactively or on the same terms. The modification or failure to reinstate the BTC could have a material adverse effect on our financial results. As of March 31, 2019 and 2018, we estimate that if the BTC is reinstated on the same terms as in 2017, our Adjusted EBITDA for business conducted in the periods would increase by approximately $55 million and $43 million for the quarters ending March 31, 2019 and March 31, 2018, respectively.

32.     The 1Q19 10-Q also stated that Renewable Energy's "disclosure controls and procedures were effective as of March 31, 2019" and that its "internal control over financial reporting was effective as of March 31, 2019."

33.     On August 6, 2019, the Company announced its second quarter 2019 financial results in a press release that stated, in relevant part:

- 197 million gallons sold

- 127 million gallons produced

- Revenues of $560.6 million

- Net loss from continuing operations of $57.6 million, or $1.52 per diluted share

- Adjusted EBITDA of negative $42.3 million

- Estimated net benefit of potential reinstatement of the federal Biodiesel Mixture Excise Tax Credit (BTC) of $81.0 million for the second quarter 2019, $136.0 million for the six months ended June 30, 2019 and $373.0 million cumulatively for 2018 and the first six months of 2019

- Settled 2019 convertible notes on maturity in June 2019 without refinancing

34.     On August 7, 2019, Renewable Energy filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2019 (the "2Q19 10-Q"), affirming the previously reported financial results. Regarding the BTC, the 2Q19 10-Q stated, in relevant part:

> It is uncertain whether the BTC will be reinstated for 2018, 2019 or later years and if reinstated, whether it would be reinstated retroactively or on the same terms. The failure to reinstate the BTC would have a material adverse effect on our financial results. For the three and six months ended June 30, 2019 and for the year ended December 31, 2018, we estimate that if the BTC is reinstated on the same terms as in 2017, the effect on our Adjusted EBITDA would be as follows:

|  | Three months ended June 30, 2019 | | Six months ended June 30, 2019 | | Twelve months ended December 31, 2018 | |
|---|---|---|---|---|---|---|
| Adjusted EBITDA without BTC | $ | (42,337) | $ | (69,697) | $ | 151,981 |
| Estimated net benefit if BTC is reinstated | | 81,000 | | 136,000 | | 237,000 |
| Estimated Adjusted EBITDA if BTC is reinstated | $ | 38,663 | $ | 66,303 | $ | 388,981 |

35.     The 2Q19 10-Q also stated that Renewable Energy's "disclosure controls and procedures were effective as of June 30, 2019" and that its "internal control over financial reporting was effective as of June 30, 2019."

36.     On November 5, 2019, Renewable Energy announced its third quarter 2019 financial results in a press release that stated, in relevant part:

- 188 million gallons sold

- 137 million gallons produced

- Revenues of $584.4 million

- Net loss from continuing operations of $13.8 million, or $0.35 per diluted share, inclusive of an $11.1 million impairment charge related to the New Boston plant closure

- Adjusted EBITDA of $10.6 million

- Estimated net benefit of potential reinstatement of the federal Biodiesel Mixture Excise Tax Credit (BTC) of $77.0 million for the third quarter 2019, $213.0 million for the nine months ended September 30, 2019 and $450.0 million cumulatively for 2018 and the first nine months of 2019

37. On November 6, 2019, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2019 (the "3Q19 10-Q"), affirming the previously reported financial results. Regarding the BTC, the report stated:

> It is uncertain whether the BTC will be reinstated for 2018, 2019 or later years and if reinstated, whether it would be reinstated retroactively or on the same terms. The failure to reinstate the BTC would have a material adverse effect on our financial results. For the three and nine months ended September 30, 2019 and for the year ended December 31, 2018, we estimate that if the BTC is reinstated on the same terms as in 2017, the effect on our Adjusted EBITDA would be as follows:

| | Three months ended September 30, 2019 | Nine months ended September 30, 2019 | Twelve months ended December 31, 2018 |
|---|---|---|---|
| Adjusted EBITDA without BTC | $ 10,622 | $ (59,074) | $ 149,737 |
| Estimated net benefit if BTC is reinstated | 77,000 | 213,000 | 237,000 |
| Estimated Adjusted EBITDA if BTC is reinstated | $ 87,622 | $ 153,926 | $ 386,737 |

38. The 3Q19 10-Q also stated that Renewable Energy's "disclosure controls and procedures were effective as of September 30, 2019" and that its "internal control over financial reporting was effective as of September 30, 2019."

39. On December 27, 2019, Renewable Energy filed a Form 8-K with the SEC. Therein, the Company stated:

> On December 20, 2019, President Trump signed into law reinstatements and extensions of a set of tax provisions, including the retroactive reinstatement for 2018 and 2019 and extension for 2020 through 2022 of the federal biodiesel mixture

excise tax credit. With respect to the business of Renewable Energy Group, Inc. (the "Company") conducted in 2018 and in the first nine months of 2019, the amount of the retroactive credit is estimated to result in an aggregate net benefit to the Company in the range of $440 million to $470 million. The aggregate net benefit for the aforementioned period, which will be recognized in the fourth quarter of 2019, will increase the Company's pre-tax operating earnings by a similar amount. For purposes of the Company's presentation of Adjusted EBITDA, the aggregate net benefit will be allocated by the Company to the corresponding quarterly periods in 2018 and 2019 in which the business giving rise to the retroactive credit was conducted. The final amount of the net benefit to be realized by the Company remains subject to completion of the Company's year-end results and financial statements.

40.     On March 5, 2020, the Company announced its fourth quarter and full year 2019

financial results in a press release that stated, in relevant part:

**Fourth Quarter 2019 Highlights:**

- 152.9 million gallons of fuel sold

- 113.7 million gallons produced

- Revenues of $1.0 billion, inclusive of the retroactive reinstatement of the Biodiesel Mixture Excise Tax Credit (BTC) for 2018 and 2019

- Net income from continuing operations available to common stockholders of $492.6 million, or $11.52 per diluted share, including the BTC

- Adjusted EBITDA of $65.0 million

- Retroactive reinstatement of the BTC for 2018 and 2019 and extension for 2020-2022

- Net cash benefit of $499.4 million from the BTC reinstatement for 2018 and 2019 is expected to be received in the second quarter of 2020

**Full Year 2019 Highlights:**

- 700.3 million gallons of fuel sold

- 494.7 million gallons produced

- Revenues of $2.6 billion, including the BTC

- Net income from continuing operations available to common stockholders of $381.1 million, or $9.01 per diluted share, including the BTC

- Adjusted EBITDA of $217.9 million

- Carbon reduction from REG produced biomass-based diesel of 3.7 million metric tons

- Record safety achievement: 0.44 OSHA incident rate (which is better than both industry average and industry leader)

41.    On March 6, 2020, the Company filed its annual report on Form 10-K for the period ended December 31, 2019 (the "2019 10-K"), affirming the previously reported financial results. Regarding the BTC, the 2019 10-K stated, in relevant part:

> The reinstatement of the 2018 and 2019 BTC resulted in an $499 million net benefit to our net income for the year ended December 31, 2019. The BTC net benefit was allocated to the corresponding quarterly Adjusted EBITDA when the business giving rise to the retroactive credit was conducted. For the years ended December 31, 2019 and 2018, the reinstatement of the 2018 and 2019 BTC resulted in a net benefit to our Adjusted EBITDA of $261 million and $238 million, respectively.

42.    The 2019 10-K also stated that Renewable Energy's "disclosure controls and procedures are effective as of December 31, 2019" and that "internal control over financial reporting was effective as of December 31, 2019."

43.    On April 30, 2020, Renewable Energy announced its first quarter 2020 financial results in a press release that stated, in relevant part:

> Revenues for the first quarter were $475 million on 140 million gallons of fuel sold. Net income from continuing operations available to common stockholders was $75 million in the first quarter of 2020, compared to a net loss of $41 million in the first quarter of 2019, which does not include the BTC allocation. Adjusted EBITDA in the first quarter was $90 million, compared to $29 million in the first quarter of 2019 including the allocation of the BTC.

44.    On May 1, 2020, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2020 (the "1Q20 10-Q"), affirming the previously reported financial results. Regarding the BTC, the report stated, in relevant part:

The reinstatement of the 2018 and 2019 BTC resulted in a $499 million net benefit to our net income for the year ended December 31, 2019. The BTC net benefit was allocated to the corresponding quarterly Adjusted EBITDA when the business giving rise to the retroactive credit was conducted. For the three months ended March 31, 2019 and the year ended December 31, 2019, the reinstatement of the 2019 BTC resulted in a net benefit to our Adjusted EBITDA of $56 million and $261 million, respectively.

45.     The 1Q20 10-Q stated that Renewable Energy's "disclosure controls and procedures were effective as of March 31, 2020" and that "internal control over financial reporting was effective as of March 31, 2020."

46.     On August 4, 2020, Renewable Energy announced its second quarter 2020 financial results in a press release that stated, in relevant part:

Revenues for the second quarter were $546 million on 183 million gallons of fuel sold. Net income from continuing operations available to common stockholders was $1 million in the second quarter of 2020, compared to a net loss of $58 million in the second quarter of 2019. The net loss in the second quarter of 2019 does not include the Biodiesel Mixture Excise Tax Credit ("BTC") allocation, which was retroactively reinstated in December 2019. Adjusted EBITDA in the second quarter was $8 million, compared to $36 million in the second quarter of 2019 including the allocation of the BTC.

47.     On August 5, 2020, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2020 (the "2Q20 10-Q"), affirming the previously reported financial results. Regarding the BTC, the report stated:

The reinstatement of the 2018 and 2019 BTC resulted in a $499 million net benefit to our net income for the year ended December 31, 2019. The BTC net benefit was allocated to the corresponding quarterly Adjusted EBITDA when the business giving rise to the retroactive credit was conducted. For the three and six months ended June 30, 2019 and the year ended December 31, 2019, the reinstatement of the 2019 BTC resulted in a net benefit to our Adjusted EBITDA of $78 million, $135 million, and $261 million, respectively.

48.     The 2Q20 10-Q stated that the Company's "disclosure controls and procedures were effective as of June 30, 2020" and that "internal control over financial reporting was effective as of June 30, 2020."

49.     On November 5, 2020, Renewable Energy announced its third quarter 2020 financial results in a press release that stated, in relevant part:

> Revenues for the third quarter were $576 million on 176 million gallons of fuel sold. Net income from continuing operations available to common stockholders was $26 million in the third quarter of 2020, compared to a net loss of $14 million in the third quarter of 2019. The net loss in the third quarter of 2019 does not include the Biodiesel Mixture Excise Tax Credit ("BTC") allocation, which was retroactively reinstated in December 2019. Adjusted EBITDA in the third quarter was $58 million, compared to $88 million in the third quarter of 2019, including the allocation of the BTC.

50.     On November 6, 2020, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2020 (the "3Q20 10-Q"), affirming the previously reported financial results. Regarding the BTC, the report stated:

> The reinstatement of the 2018 and 2019 BTC resulted in a $499 million net benefit to our net income for the year ended December 31, 2019. The BTC net benefit was allocated to our corresponding quarterly adjusted earnings before interest, taxes, depreciation and amortization ("Adjusted EBITDA") when the business giving rise to the retroactive credit was conducted. For the three and nine months ended September 30, 2019 and the year ended December 31, 2019, the reinstatement of the 2019 BTC resulted in a net benefit to our Adjusted EBITDA of $77 million, $212 million, and $261 million, respectively.

51.     The 3Q20 10-Q stated that Renewable Energy's "disclosure controls and procedures were effective as of September 30, 2020" and that "internal control over financial reporting was effective as of September 30, 2020."

52.     On December 3, 2020, Renewable Energy announced that Chad Stone "ceased to serve as the Company's principal financial officer" and was "appointed Senior Vice President, Commercial Performance of the Company."

53.     The above statements identified in ¶¶ 21-52 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that due to failures in the diesel additive system, petroleum diesel was not periodically added to certain loads by the

Company and was instead added by the Company's customers; (2) that, as a result, Renewable Energy was not the proper claimant for certain BTC payments on biodiesel it sold between January 1, 2017 and September 30, 2020; (3) that, as a result, Renewable Energy's revenue and net income were overstated for certain periods; (4) that there was a material weakness in the Company's internal control over financial reporting related to the purchase and use of the petroleum diesel gallons when blending with biodiesel; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

54.     On February 25, 2021, after the market closed, Renewable Energy issued a press release announcing its fourth quarter and full year 2020 financial results. Therein, the Company revealed that it would restate "$38.2 million in cumulative revenue from January 2018 through September 30, 2020" because Renewable Energy was not the "proper claimant for certain BTC payments on biodiesel it sold between January 1, 2017 and September 30, 2020." Renewable Energy further stated that it had reached an agreement with the Internal Revenue Service "on a $40.5 million assessment, excluding interest" to correct these claims. Specifically, the Company stated:

> **Biodiesel Tax Credit Assessment**
>
> ***The restatement is the result of the Company not being the proper claimant for certain BTC payments on biodiesel it sold between January 1, 2017 and September 30, 2020. REG qualifies for the BTC when it blends petroleum diesel with biodiesel.*** Due to failures in the diesel additive system at the Company's facility in Seneca, Illinois, petroleum diesel was periodically not added to certain loads. As a result, the Company's customers who received these loads and subsequently added petroleum diesel are the proper claimants on these biodiesel gallons rather than the Company's REG Seneca subsidiary.
>
> The Company discovered the blending discrepancy in connection with its preparation for a standard IRS audit of its BTC filings. The Company self-reported

the findings to the IRS and initiated an investigation overseen by the Audit Committee of the Company's Board of Directors. The Company concluded this discrepancy is limited to Seneca. In addition, all of the Company's other U.S. biorefineries have passed their relevant IRS audits.

***REG reached agreement on February 23, 2021 with the IRS on a $40.5 million assessment, excluding interest, to correct the REG Seneca BTC claims.*** This reflects assessments of $14.8 million, $9.9 million, $7.6 million and $8.2 million for the tax years 2017, 2018, 2019, and the first three quarters of 2020, respectively. The $2.3 million difference between the $40.5 million tax liability and $38.2 million in revenue being restated is a result of the Company's ability to recover the BTC in instances where another REG subsidiary blended the biodiesel with petroleum diesel and was thus the proper claimant. The Company is working with its customers on BTC re-filings on these gallons to recover as much of the $38.2 million as possible.

*     *     *

### Restatement of Financial Results

While the BTC adjustment in each individual year is not material, the Company determined that the aggregate BTC adjustment is material in 2019. As a result, the Company is restating its financial statements for the years ended December 31, 2019 and 2018 and the quarters ended March 31, June 30 and September 30, 2019 and 2018. The 2017 BTC was recognized as revenue in the first quarter of 2018, so the BTC assessment does not affect the Company's 2017 GAAP financial statements. ***A material weakness in the Company's internal control over financial reporting directly related to the restatement was found to exist as of December 31, 2020 and December 31, 2019.*** The Company has taken the remediation actions described above to address this material weakness.

REG today filed with the SEC an amended Form 10-K for the year ended December 31, 2019. The amended Form 10-K includes additional details regarding the restatement for the years ended December 31, 2019 and 2018. In addition, REG expects to file on March 1, 2021 its Form 10-K for the year ended December 31, 2020, which will include amended financial results for the quarters ended March 31, June 30 and September 30, 2020 that reflect an immaterial restatement for those periods.

55.     The same day, Renewable Energy filed its amended 2019 10-K restated its revenues

and net income as follows:

The impact on the Company's financial statements for the years ended December 31, 2019 and 2018 is to decrease Biomass-based diesel government incentives revenue and increase interest expense (thereby increasing accounts payable and accrued expenses and other liabilities as shown on the balance sheet), as follows:

| | Years Ended | | | |
| --- | --- | --- | --- | --- |
| *(in thousands)* | December 31, 2019 | | December 31, 2018 | |
| Reduction in revenues | $ | 16,177 | $ | 14,509 |
| Increase in interest expense | | 1,059 | | 649 |
| Reduction in net income | $ | 17,236 | $ | 15,158 |

56.     The amended 2019 10-K identified material weaknesses in the Company internal control over financial reporting:

### *Material Weakness in Internal Control Over Financial Reporting*

The Company's BTC filings are subject to standard audits by the Internal Revenue Service ("IRS"). In connection with the Company's preparation for audits of its 2018 and 2019 BTC filings, the Company discovered that fewer gallons of petroleum diesel had been blended at the Company's biorefinery in Seneca, Illinois, than would be required for the volume of B99.9 reported as being sold during each those two years. Following the identification of this shortage, the Company initiated an investigation, which found that the petroleum diesel additive system at the Company's Seneca biorefinery was periodically not adding petroleum diesel to certain loads.

As a result, the Company identified certain errors in its previously reported financial statements for the years ended December 31, 2019 and 2018. The Company's preventive and review controls failed to detect the errors related to the purchase and use of the petroleum diesel gallons when blending with biodiesel. The material weakness resulted in an overstatement of biomass-based diesel government incentive revenue and an understatement of interest expense for the years ended December 31, 2019 and 2018 and a corresponding understatement of accounts payable and accrued expenses and other liabilities as of December 31, 2019 and 2018. This material weakness has not been remediated as of December 31, 2019, and due to this, the Company concluded that its internal control over financial reporting was not effective as of December 31, 2019.

57.     On this news, the Company's share price fell $8.17, or 9.5%, over two consecutive trading sessions to close at $77.77 per share on February 26, 2021, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Renewable Energy securities between May 3, 2018 and February 25, 2021, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

59.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Renewable Energy's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Renewable Energy shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Renewable Energy or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

60.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

61.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

62.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Renewable Energy; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

63.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

64.     The market for Renewable Energy's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Renewable Energy's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Renewable Energy's securities relying upon the integrity of the market price of the Company's securities and market information relating to Renewable Energy, and have been damaged thereby.

65.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Renewable Energy's securities, by publicly issuing false and/or misleading

statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Renewable Energy's business, operations, and prospects as alleged herein.

66.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Renewable Energy's financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

67.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

68.     During the Class Period, Plaintiff and the Class purchased Renewable Energy's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

69.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Renewable Energy, their control over, and/or receipt and/or modification of Renewable Energy's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Renewable Energy, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

70.     The market for Renewable Energy's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Renewable Energy's securities traded at artificially inflated prices during the Class Period.  On February 10, 2021, the Company's share price closed at a Class Period high of $113.68 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Renewable Energy's securities and market information relating to Renewable Energy, and have been damaged thereby.

71.     During the Class Period, the artificial inflation of Renewable Energy's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint

causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Renewable Energy's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Renewable Energy and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

72.     At all relevant times, the market for Renewable Energy's securities was an efficient market for the following reasons, among others:

(a)     Renewable Energy shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Renewable Energy filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Renewable Energy regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Renewable Energy was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the

sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

73.     As a result of the foregoing, the market for Renewable Energy's securities promptly digested current information regarding Renewable Energy from all publicly available sources and reflected such information in Renewable Energy's share price.  Under these circumstances, all purchasers of Renewable Energy's securities during the Class Period suffered similar injury through their purchase of Renewable Energy's securities at artificially inflated prices and a presumption of reliance applies.

74.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

75.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when

24

made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Renewable Energy who knew that the statement was false when made.

## FIRST CLAIM

**Violation of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

76.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

77.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Renewable Energy's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

78.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Renewable Energy's securities in violation of Section

10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

79.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Renewable Energy's financial well-being and prospects, as specified herein.

80.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Renewable Energy's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Renewable Energy and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

81.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the

other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

82.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Renewable Energy's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

83.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Renewable Energy's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public

statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Renewable Energy's securities during the Class Period at artificially high prices and were damaged thereby.

84.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Renewable Energy was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Renewable Energy securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

85.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

86.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## **SECOND CLAIM**

### **Violation of Section 20(a) of The Exchange Act**
### **Against the Individual Defendants**

87.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

88.     Individual Defendants acted as controlling persons of Renewable Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the

Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

89.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

90.     As set forth above, Renewable Energy and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 2, 2021

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Attorneys for Plaintiff David Ramsey*

## SWORN CERTIFICATION OF PLAINTIFF

## RENEWABLE ENERGY GROUP INC. SECURITIES LITIGATION

I, David Ramsey, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Renewable Energy Group Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Renewable Energy Group Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

2/26/2021
_____
Date

DocuSigned by:
*David Ramsey*
2103368C665B420...
_____
David Ramsey

**David Ramsey's Transactions in Renewable Energy Group, Inc. (REGI)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 2/25/2021 | Bought | 72 | $92.9200 |