```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
 IN RE RENEWABLE ENERGY GROUP             :      21cv1832 (DLC)
 SECURITIES LITIGATION                    :
                                          :      OPINION AND ORDER
-----------------------------------------X
```

APPEARANCES:

For lead plaintiff:
Constantine Philip Economides
Ivy T. Ngo
Devin Freedman
Roche Freedman LLP
1 SE 3rd Ave.
Suite 1240
Miami, FL 33131

For defendants:
Erika M. Schutzman
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

Susan Samuels Muck
Wilmer Cutler Pickering Hale & Dorr LLP
One Front Street
Suite 3500
San Francisco, CA 94111

Michael G. Bongiorno
Jeremy Todd Adler
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
New York, NY 10007

DENISE COTE, District Judge:

Investors in Renewable Energy ("REG"), a producer of biodiesel fuel, have brought a federal securities class action against the company and four of its officers (the "Individual Defendants"). The plaintiff alleges that the defendants made

two sets of false statements regarding the adequacy of REG's controls, specifically its accounting and operating controls. In a disclosure in mid-2020, REG revealed that it had made accounting errors during the early days of the pandemic when staff were working from home.  Then, in early 2021, REG revealed that over the course of more than three years there had been an intermittent fuel blending discrepancy at one of its twelve operating facilities.  According to the plaintiff, defendants' statements about the adequacy of its controls artificially inflated the price of REG's stock between March 8, 2018 and February 25, 2021 (the "Class Period").  The defendants have moved to dismiss for failure to state a claim.  Defendants' motion is granted.

## Background

The following facts are drawn from the Amended Complaint and documents relied upon by the Amended Complaint.  For the purposes of deciding this motion, plaintiff's factual allegations are accepted as true, and all reasonable inferences are drawn in plaintiff's favor.

REG is a renewable fuel company and the largest biodiesel producer in the United States.  REG operates twelve biorefineries, including a biodiesel production facility in Seneca, Illinois.  REG sells both B100, which is 100% biodiesel,

and blended B99.9 biodiesel, which is a blend of B100 and 0.1% of petroleum diesel.

I. Projection Error

On April 30, 2020, defendants told investors that REG expected a gain of "adjusted EBITDA in the range of $20 to $35 million" in the second quarter of 2020. On May 1, 2020, the Company filed its first quarter 2020 10-Q and assured investors that its "disclosure controls and procedures were effective as of March 31, 2020" and its "internal control over financial reporting was effective as of March 31, 2020."

On June 23, 2020, however, REG disclosed a revised outlook of the second-quarter 2020 adjusted EBITDA. REG announced that the adjusted EBITDA was actually negative $2 to $12 million.

In a press release, REG explained that one of the factors contributing to the revised EBITDA calculation was that

> [t]he guidance model used in connection with the previous estimate contained inadvertent calculation errors, which on their own would have resulted in a significant reduction in the Company's previous Adjusted EBITDA estimate.

REG attributed these calculation errors to "COVID-19 work from home issues" and the failure by accounting staff to correctly reconcile "MS exchange sheets." Upon this announcement, REG's share price fell by $5.85 to close at $22.73 per share on June 24, 2020.

3

II. Blending Failures at Seneca Plant

In addition to earning revenue from the sale of biodiesel, REG receives biodiesel mixture excise tax credits ("BTCs"). BTCs are federal tax incentives which provide a $1.00 excise tax credit for each gallon of blended biofuel produced. To receive a BTC, the company must either use B99.9 in its own operations or sell the blended mixture to a third party. The company must also show proof of the specific gallons of B99.9 created, used, and sold. The BTC must first be taken as a credit against the Company's fuel tax liability and any excess can be claimed as a direct payment from the IRS.

On February 25, 2021, REG announced that "[d]ue to failures in the diesel additive system" at the facility in Seneca "petroleum diesel was periodically not added to certain loads" for two dozen customers. As a consequence, it was "the Company's customers who received these loads and subsequently added petroleum diesel" who were the proper claimants for the associated BTC payments.

REG noted that it "discovered the blending discrepancy in connection with its preparation for a standard IRS audit of its BTC filings." REG agreed to return to the IRS BTC credits totaling $40.5 million for the years 2017, 2018, 2019 and the first three quarters of 2020 "to correct the REG Seneca BTC claims."

4

Renewable Energy filed its Amended 2019 10-K that same day. In the 10-K, REG described the effect of the discrepancy, noting that

> [t]he impact on the Company's financial statements for the years ended December 31, 2019 and 2018 is to decrease Biomass-based diesel government incentives revenue and increase interest expense (thereby increasing accounts payable and accrued expenses and other liabilities as shown on the balance sheet).

On February 25, during the fourth-quarter 2020 Earnings Call, Cynthia Warner, Chief Executive Officer from January 14, 2019 to present, stated that "it really is about putting in place stronger systems of assurance." She further explained that

> [t]he situation at Seneca was a one-off, it was a design issue, and it was intermittent. So putting in place, the extra assurance processes give us confidence that if there were something like that, we would become aware of it.

On February 26, the Company's share price fell 9.5% to close at $77.77 per share.

I.  Procedural History

This action was filed on March 2, 2021. On May 19, Steven Rosa was appointed as lead plaintiff, in accordance with the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3). The lead plaintiff filed an amended complaint ("FAC") on July 9.

5

The FAC alleges (1) that the defendants violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, and (2) that the Individual Defendants violated § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  On August 6, the defendants moved to dismiss.  The motion became fully submitted on September 24.

## Discussion

When deciding a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a court must "accept all factual allegations as true" and "draw all reasonable inferences in favor of the plaintiffs."  Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted).  A claim is sufficiently plausible to withstand a motion to dismiss when the "factual content" of the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Cavello Bay Reinsurance Ltd. v. Shubin Stein, 986 F.3d 161, 165 (2d Cir. 2021) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In the context of a securities class action, a court may consider not only the complaint itself, but also "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents, and documents possessed by or known to the plaintiff

6

upon which it relied in bringing the suit." In re Synchrony Fin. Sec. Litig., 988 F.3d 157, 171 (2d Cir. 2021).

A complaint alleging securities fraud must satisfy the heightened pleading requirements of the PSLRA and Fed. R. Civ. P. 9(b) by stating "with particularity the circumstances constituting fraud." Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co., 19 F.4th 145, 150 (2d Cir. 2021) (citation omitted). SEC Rule 10b-5 renders it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5; see also 15 U.S.C. § 78j(b). To avoid dismissal under Rule 10b-5, a complaint must plausibly allege that the defendant "(1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." Altimeo Asset Mgmt., 19 F.4th at 149-50 (2d Cir. 2021) (citation omitted). Here, the disputed issue is whether the plaintiff has adequately pleaded facts giving rise to a strong inference of scienter.

To adequately plead scienter, the PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong

inference that the defendant acted with the required state of mind." In re Synchrony Fin. Sec. Litig., 988 F.3d at 167 (citation omitted).  In evaluating the sufficiency of scienter allegations, courts must "tak[e] into account plausible opposing inferences and consider[] plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford, 794 F.3d 297, 305 (2d Cir. 2015) (citation omitted).

The requisite scienter can be established by "alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." Setzer v. Omega Healthcare Invs., Inc., 968 F.3d 204, 212 (2d Cir. 2020) (citation omitted).

> Circumstantial evidence can support an inference of scienter in a variety of ways, including where defendants (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor.

Blanford, 794 F.3d at 306 (citation omitted).

When plaintiffs have not pleaded motive on the part of corporate officers, "the strength of the circumstantial allegations must be correspondingly greater." ECA, Local 134

8

IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 198-99 (2d Cir. 2009). Where plaintiffs "rely solely on the [d]efendants' alleged conscious misbehavior or recklessness," they must adequately plead "conscious recklessness -- i.e., a state of mind approximating actual intent." Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 106 (2d Cir. 2015) (citation omitted).

"In the securities fraud context, recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care, not merely a heightened form of negligence." In re Advanced Battery Techs., Inc., 781 F.3d 638, 644 (2d Cir. 2015) (citation omitted). "Corporate officials need not be clairvoyant" to avoid a finding of recklessness; "they are only responsible for revealing those material facts reasonably available to them." Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir. 2000). Finally, "[w]here a defendant is a corporation, this requires pleading facts that give rise to a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." Jackson v. Abernathy, 960 F.3d 94, 98 (2d Cir. 2020) (citation omitted).

The FAC fails to plead the defendants' scienter. In opposition to the defendants' motion to dismiss, the plaintiff relies exclusively on an assertion that the defendants' reckless conduct creates a strong inference of scienter. The plaintiff

9

has not pleaded that any defendant benefitted in a concrete and personal way from the purported fraud or that any defendant engaged in deliberately illegal behavior.  The plaintiff's circumstantial evidence thus rests on the assertions that the defendants knew facts or had access to information suggesting that their public statements were not accurate and failed to check information they had a duty to monitor.

"Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."  Novak, 216 F.3d at 309.  The plaintiff fails to do so.  The plaintiff does not reference any specific information that a defendant knew or should have known that would have alerted them to the calculation errors made during the early days of the pandemic when accounting staff were working from home or to the intermittent Seneca Plant blending errors.  Relatedly, the plaintiff fails to identify any reports or statements that a defendant had a duty to monitor which would have alerted the defendant to the errors.

Based on REG's representation that it discovered the fuel-blending problem at the Seneca facility while preparing for an IRS audit, the plaintiff suggests in opposition to this motion that the defendants must have known of the fuel blending problem at the Seneca plant for a significant period of time, including before its filing of its 3Q20 results, and yet concealed those

10

problems from investors.  The FAC does not allege that the problem was discovered at any particular point in time, including before the filing of its 3Q20 results.  The FAC's allegations are consistent with the discovery of the problem during the fourth quarter of 2020, and the reporting of the problem and the results of its investigation when it issued its Form 10-K for 2020 on March 1, 2021.  A company is permitted a period of time to investigate any problem it detects before reporting it to the public.  See Slayton v. Am. Exp. Co., 604 F.3d 758, 777 (2d Cir. 2010) (finding that taking the time to order an investigation, ascertain, and disclose future losses "was a prudent course of action that weakens rather than strengthens an inference of scienter").

Plaintiff next argues that even if he has failed to plead scienter as to any Individual Defendant or any particular person, the FAC does plead corporate scienter.  Plaintiff argues that the pleadings show corporate scienter because there was systemic recklessness at REG and management repeatedly certified the effectiveness of the company's internal controls.

To show corporate scienter, "a plaintiff must show that the misstatement was not a case of mere mismanagement, but rather the product of collective fraudulent conduct."  Jackson, 960 F.3d at 96.  The misstatements here were, at worst, a result of

negligence in maintaining internal controls. They do not plead collective fraudulent conduct.

Finally, the plaintiff contends that the magnitude of the accounting error, turning a projection of a $35 million gain to a projected $12 million loss, is sufficient to plead recklessness. It is not. While the size of the error may properly be considered when evaluating an allegation of recklessness, it is not sufficient standing by itself to plead recklessness. See In re Perrigo Co. PLC Sec. Litig., 435 F. Supp. 3d 571, 588 (S.D.N.Y. 2020).

## Conclusion

Defendants' August 6, 2021 motion to dismiss is granted. The Clerk of Court shall close the case.

Dated:  New York, New York
        January 20, 2022

_____
DENISE COTE
United States District Judge